Form 7

FORM 7.    Appeal Information Sheet

# FEDERAL CIRCUIT APPEAL INFORMATION SHEET

[✓]    United States District Court for the DISTRICT OF MASSACHUSETTS

[ ]    United States Court of International Trade

[ ]    United States Court of Federal Claims

[ ]    United States Court of Appeals for Veterans Claims

Type of case: PATENT INFRINGMENT

INLINE PLASTICS CORP.    v. EASYPAK, LLC

(List all parties.  Use an asterisk to indicate dismissed or withdrawn parties.  Use a separate sheet if needed.  Explain any discrepancy with the caption used on the judgment, order, or opinion.)

Docket No. 11CV11470-TSH          Date of Judgment or Order FEBRUARY 4, 2014

Cross or related appeal? _____          Date of Notice of Appeal   FEBRUARY 14, 2014

Appellant is:  [✓] Plaintiff    [ ] Defendant    [ ] Other (explain)_____

FEES:    Court of Appeals docket fee paid?        [✓]Yes    [ ]No

U.S. Appeal?        [ ]Yes    [✓]No

In forma pauperis?        [ ]Yes    [✓]No

Is this matter under seal?    [ ]Yes    [✓]No

COUNSEL: (List name, firm, address, and telephone of lead counsel for each party.  Indicate party represented.  Use separate sheet if needed.)

Adam P. Samansky                    Craig M. Scott
Edwards Wildman Palmer LLP          Scott & Bush. Ltd.
111 Huntington Avenue              One Turks Head Place - 4th Floor
Boston MA 02199                    Providence RI 02903
617-239-0100                      401-865-6035

COURT REPORTER: (Name and telephone): Marianne Kusa-Ryll (justicehill@aol.com)

IMPORTANT: Attach a copy of the judgment or order appealed from and any supporting opinion or memorandum.  Forward together with a copy of the notice of appeal and certified docket entries.

Clerk of Court
United States Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC  20439

APPEAL,PATENT,STAYED

# United States District Court
## District of Massachusetts (Worcester)
## CIVIL DOCKET FOR CASE #: 4:11-cv-11470-TSH

Inline Plastics Corp. v. Easypak, LLC
Assigned to: District Judge Timothy S Hillman
Cause: 35:271 Patent Infringement

Date Filed: 08/17/2011
Date Terminated: 02/04/2014
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**Inline Plastics Corp.**
*a Connecticut corporation*

represented by   **Daniel D. Cotta**
Edwards Angell Palmer & Dodge LLP -
MA
111 Huntington Avenue
Boston, MA 02199
617-239-0373
Email: dcotta@eapdlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam P. Samansky**
Edwards Wildman Palmer LLP - MA
111 Huntington Avenue
Boston, MA 02199
617-239-0100
Email: asamansky@edwardswildman.com
*ATTORNEY TO BE NOTICED*

**Barry Kramer**
Edwards Wildman Palmer LLP
201 Broad Street
Stamford, CT 06901
203-353-6841
Email: bkramer@edwardswildman.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David J. Silvia**
Edwards Wildman Palmer LLP
One Canterbury Green
201 Broad Street
Stamford, CT 06307
203-975-7505
Email: dsilvia@edwardswildman.com
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Deborah H. Dodge**
Edwards Wildman Palmer LLP - MA
111 Huntington Avenue
Boston, MA 02199
617-239-0510
Fax: 888-325-9470
Email: ddodge@edwardswildman.com
*TERMINATED: 10/18/2012*
*ATTORNEY TO BE NOTICED*

**Elizabeth Anderson Spinney**
Edwards Wildman Palmer LLP - MA
111 Huntington Avenue
Boston, MA 02199
617-951-2265
Fax: 888-325-9415
Email: espinney@edwardswildman.com
*ATTORNEY TO BE NOTICED*

**Gabriel McCool**
Edwards Wildman Palmer LLP
One Canterbury Green
201 Broad Street
Stamford, CT 06307
203-975-7505
Email: gmccool@mccarter.com
*TERMINATED: 10/25/2012*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter J. Cuomo**
Edwards Wildman Palmer LLP - MA
111 Huntington Avenue
Boston, MA 02199
617-239-0870
Fax: 617-227-4420
Email: pcuomo@edwardswildman.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**EasyPak, LLC**
*a Massachusetts corporation*

represented by **Anastasia A. Dubrovsky**
Scott & Bush Ltd.
One Turks Head Place
4th Flr.
Providence, RI 02903
401-865-6035

Email: adubrovsky@scottbushlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christine K. Bush**
Scott & Bush, Ltd.
30 Kennedy Plaza, 4th Flr.
Providence, RI 02903
401-865-6035
Email: cbush@scottbushlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Craig M. Scott**
Scott & Bush, Ltd.
One Turks Head Place
4th Floor
Providence, RI 02903
401-865-6035
Fax: 401-865-6039
Email: cscott@scottbushlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel E. Ostrach**
Scott & Bush Ltd.
One Turks Head Place
4th Flr.
Providence, RI 02903
401-865-6035
Email: dostrach@scottbushlaw.com
*TERMINATED: 10/07/2013*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mediator**

**Judge Marianne B. Bowler**
*TERMINATED: 09/05/2013*

**Counter Claimant**

**EasyPak, LLC**                    represented by  **Anastasia A. Dubrovsky**
*a Massachusetts corporation*                      (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christine K. Bush**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Craig M. Scott**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel E. Ostrach**
(See above for address)
*TERMINATED: 10/07/2013*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Inline Plastics Corp.**                    represented by   **Daniel D. Cotta**
*a Connecticut corporation*                                   (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Adam P. Samansky**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Barry Kramer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David J. Silvia**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deborah H. Dodge**
(See above for address)
*TERMINATED: 10/18/2012*
*ATTORNEY TO BE NOTICED*

**Elizabeth Anderson Spinney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel McCool**
(See above for address)
*TERMINATED: 10/25/2012*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter J. Cuomo**
(See above for address)

*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/17/2011 | 1 | COMPLAINT against EasyPak, LLC Filing fee: $ 350, receipt number 0101-3546142 (Fee Status: Filing Fee paid), filed by Inline Plastics Corp.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Civil Cover Sheet, # 5 Category Sheet)(Cotta, Daniel) (Attachment 5 replaced on 8/18/2011) (Gaudet, Jennifer). (Entered: 08/17/2011) |
| 08/17/2011 | 2 | CORPORATE DISCLOSURE STATEMENT by Inline Plastics Corp.. (Cotta, Daniel) (Entered: 08/17/2011) |
| 08/18/2011 | | Case transferred to Central Division (Worcester). (Gaudet, Jennifer) (Entered: 08/18/2011) |
| 08/18/2011 | | Case transferred in from Eastern Division (Boston) on 8/18/11 Case Number 1:11-cv-11470. (Alba, Robert) (Entered: 08/18/2011) |
| 08/18/2011 | 3 | NOTICE of Case Assignment. Magistrate Judge Timothy S. Hillman assigned to case. Plaintiff's counsel, or defendant's counsel if this case was initiated by the filing of a Notice of Removal, are directed to the attached General Order and Notice regarding Consent to Proceed before the Magistrate Judge. These documents will be mailed to counsel not receiving notice electronically. (Abaid, Kimberly) (Entered: 08/18/2011) |
| 08/19/2011 | 4 | Summons Issued as to EasyPak, LLC. Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service. (Burgos, Sandra) (Entered: 08/19/2011) |
| 08/19/2011 | 5 | REPORT ON THE FILING OF AN ACTION REGARDING PATENT OR TRADEMARK. (Cotta, Daniel) (Main Document 5 replaced on 8/22/2011) (Burgos, Sandra). (Entered: 08/19/2011) |
| 09/12/2011 | 6 | SUMMONS Returned Executed EasyPak, LLC served on 9/12/2011, answer due 10/3/2011. (Cotta, Daniel) (Entered: 09/12/2011) |
| 09/16/2011 | 7 | NOTICE of Appearance by Craig M. Scott on behalf of EasyPak, LLC (Scott, Craig) (Entered: 09/16/2011) |
| 09/16/2011 | 8 | NOTICE of Appearance by Christine K. Bush on behalf of EasyPak, LLC (Bush, Christine) (Entered: 09/16/2011) |
| 09/30/2011 | 9 | STIPULATION re 1 Complaint, *EXTENDING TIME TO RESPOND* by EasyPak, LLC. (Scott, Craig) (Entered: 09/30/2011) |
| 10/03/2011 | | ELECTRONIC NOTICE TO COUNSEL: Notification forms indicating whether or not a party has consented to proceed before a U.S. Magistrate Judge have not been received in the Clerk's Office. The submission of the form is mandatory. Completed forms shall be filed promptly. Additional forms can be obtained on the Court's web page at |

| | | |
|---|---|---|
| | | http://www.mad.uscourts.gov. (Burgos, Sandra) (Entered: 10/03/2011) |
| 10/03/2011 | | Reset Answer Deadlines for EasyPak, LLC. Answer due 11/2/2011. (Burgos, Sandra) (Entered: 10/03/2011) |
| 10/05/2011 | 10 | NOTICE of Change of Address or Firm Name by Daniel D. Cotta (Cotta, Daniel) (Entered: 10/05/2011) |
| 11/02/2011 | 11 | ANSWER to 1 Complaint, with Jury Demand, COUNTERCLAIM against Inline Plastics Corp. by EasyPak, LLC.(Scott, Craig) (Entered: 11/02/2011) |
| 11/03/2011 | 12 | Refusal to Consent to Proceed Before a US Magistrate Judge.. (Cotta, Daniel) (Entered: 11/03/2011) |
| 11/04/2011 | | ELECTRONIC NOTICE of Reassignment. Judge F. Dennis Saylor, IV added. Magistrate Judge Timothy S. Hillman no longer assigned to case. (Folan, Karen) (Entered: 11/04/2011) |
| 11/22/2011 | 13 | ANSWER to Counterclaim by Inline Plastics Corp..(Cotta, Daniel) (Entered: 11/22/2011) |
| 11/30/2011 | 14 | MOTION for Leave to Appear Pro Hac Vice for admission of Barry Kramer Filing fee: $ 50, receipt number 0101-3693126 by Inline Plastics Corp.. (Attachments: # 1 Affidavit Certificate of Barry Kramer in Suport of Motion for Admission Pro Hac Vice)(Cotta, Daniel) (Entered: 11/30/2011) |
| 11/30/2011 | 15 | MOTION for Leave to Appear Pro Hac Vice for admission of David J. Silvia Filing fee: $ 50, receipt number 0101-3693209 by Inline Plastics Corp.. (Attachments: # 1 Affidavit Certificate of David J. Silvia in Support of Motion for Admission Pro Hac Vice)(Cotta, Daniel) (Entered: 11/30/2011) |
| 11/30/2011 | 16 | MOTION for Leave to Appear Pro Hac Vice for admission of Gabriel McCool Filing fee: $ 50, receipt number 0101-3693220 by Inline Plastics Corp.. (Attachments: # 1 Affidavit Certificate of Gabriel McCool in Support of Motion for Admission Pro Hac Vice)(Cotta, Daniel) (Entered: 11/30/2011) |
| 12/02/2011 | | Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 14 Motion for Leave to Appear Pro Hac Vice, Added Barry Kramer. **Attorneys admitted Pro Hac Vice must register for electronic filing. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Burgos, Sandra) (Entered: 12/02/2011) |
| 12/02/2011 | | Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 15 Motion for Leave to Appear Pro Hac Vice, Added David J. Silvia. **Attorneys admitted Pro Hac Vice must register for electronic filing. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Burgos, Sandra) (Entered: 12/02/2011) |
| 12/02/2011 | | Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 16 Motion for Leave to Appear Pro Hac Vice, Added Gabriel McCool. **Attorneys admitted Pro Hac Vice must register for electronic filing. To register go to the Court website at www.mad.uscourts.gov. Select Case** |

| | | |
|---|---|---|
| | | **Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Burgos, Sandra) (Entered: 12/02/2011) |
| 01/11/2012 | 17 | NOTICE of Scheduling Conference. Scheduling Conference set for 2/10/2012 at 10:45AM in Courtroom 2 - Worcester before Judge F. Dennis Saylor IV. (Castles, Martin) (Entered: 01/11/2012) |
| 02/03/2012 | 18 | JOINT STATEMENT re scheduling conference *(Report of Parties' Planning Conference and Joint Statement Pursuant to Local Rule 16.1.* (Cotta, Daniel) (Entered: 02/03/2012) |
| 02/03/2012 | 19 | CERTIFICATION pursuant to Local Rule 16.1 *CERTIFICATION OF INLINE PLASTICS COUNSEL PURSUANT TO LOCAL RULE 16.1(d)(3) REGARDING BUDGET AND ALTERNATIVE DISPUTE RESOLUTION.* (Cotta, Daniel) (Entered: 02/03/2012) |
| 02/03/2012 | 20 | CERTIFICATION pursuant to Local Rule 16.1 *CERTIFICATION OF AUTHORIZED REPRESENTATIVE OF INLINE PLASTICS PURSUANT TO LOCAL RULE 16.1(d)(3) REGARDING BUDGET AND ALTERNATIVE DISPUTE RESOLUTION.* (Cotta, Daniel) (Entered: 02/03/2012) |
| 02/10/2012 | | ELECTRONIC Clerk's Notes for proceedings held before Judge F. Dennis Saylor, IV: Scheduling Conference held on 2/10/2012, Case called, Counsel appear for scheduling conference, Court adopts deadlines in parties joint statement as scheduling order, Court does not order a discovery cutoff date at this time, Court sets matter for two (2) further status conferences, ( Status Conference set for 5/15/2012 at 2:00PM in Courtroom 2 - Worcester before Judge F. Dennis Saylor IV, and Status Conference set for 7/10/2012 at 3:00PM in Courtroom 2 - Worcester before Judge F. Dennis Saylor IV). (Court Reporter: Marianne Kusa-Ryll at justicehill@aol.com)(Attorneys present: Cotta,Silvia/Scott) (Castles, Martin) (Entered: 02/10/2012) |
| 02/20/2012 | 21 | CERTIFICATION pursuant to Local Rule 16.1 *of EasyPak, LLC.* (Scott, Craig) (Entered: 02/20/2012) |
| 02/24/2012 | 22 | Preliminary Disclosure of the Claims Infringed by Inline Plastics Corp.. (Attachments: # 1 Supplement Claim Chart '003 Patent, # 2 Supplement Claim Chart '680 Patent)(Cotta, Daniel) (Entered: 02/24/2012) |
| 04/20/2012 | 23 | Preliminary Invalidity and Non-Infringement Contentions by EasyPak, LLC. (Scott, Craig) (Entered: 04/20/2012) |
| 05/04/2012 | 24 | Joint MOTION for Protective Order by Inline Plastics Corp.. (Attachments: # 1 Text of Proposed Order Proposed Protective Order and Confidentiality Agreement Pursuant to Fed. R. Civ. P. 26(c))(Silvia, David) (Entered: 05/04/2012) |
| 05/08/2012 | | Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 24 Joint Motion for Protective Order. (Burgos, Sandra) (Entered: 05/09/2012) |
| 05/08/2012 | 25 | Judge F. Dennis Saylor, IV: ORDER entered. PROTECTIVE ORDER and CONFIDENTIALITY AGREEMENT.(Burgos, Sandra) (Entered: 05/09/2012) |

| 05/15/2012 | | ELECTRONIC Clerk's Notes for proceedings held before Judge F. Dennis Saylor, IV: Status Conference held on 5/15/2012, Case called, Counsel appear by telephone for status conference, Parties inform the Court that discovery is ongoing, Parties report no issues at this time, Next status conference is set for 7/10/12 at 3:00PM. (Court Reporter: Marianne Kusa-Ryll at justicehill@aol.com)(Attorneys present: Kramer,Silvia/Scott) (Castles, Martin) (Entered: 05/15/2012) |
|---|---|---|
| 06/13/2012 | | ELECTRONIC NOTICE of Reassignment to New District Judge Timothy S Hillman. Judge F. Dennis Saylor, IV no longer assigned to case. (Abaid, Kimberly) (Entered: 06/13/2012) |
| 06/25/2012 | 26 | Joint MOTION for Extension of Time to Extend Briefing Schedule by EasyPak, LLC.(Scott, Craig) (Entered: 06/25/2012) |
| 06/27/2012 | | Judge Timothy Hillman: ELECTRONIC ORDER entered granting 26 Motion for Extension of briefing schedule. The status conference set for 7/10/12 at 3:00PM will remain as scheduled. (Castles, Martin) Modified on 6/27/2012 (Castles, Martin). (Entered: 06/27/2012) |
| 06/27/2012 | 27 | NOTICE of Change of Address or Firm Name by Craig M. Scott (Scott, Craig) (Entered: 06/27/2012) |
| 06/28/2012 | 28 | NOTICE of Appearance by Deborah H. Dodge on behalf of Inline Plastics Corp. (Dodge, Deborah) (Entered: 06/28/2012) |
| 06/29/2012 | | ELECTRONIC NOTICE of Hearing. Status Conference set for 7/10/2012 at 3:00PM in Courtroom 1 - Worcester before District Judge Timothy S Hillman. (Castles, Martin) (Entered: 06/29/2012) |
| 07/10/2012 | 29 | ELECTRONIC Clerk's Notes for proceedings held before District Judge Timothy S Hillman: Status Conference held on 7/10/2012, Case called, Counsel appear by telephone, Counsel discuss extensions, Issue to be revisited at further Status Conference set for 8/9/2012 02:30 PM in Courtroom 2 - Worcester before District Judge Timothy S Hillman. (Court Reporter: Helana Kline at helanakline@aol.com.)(Attorneys present: Dodge, Kramer, Scott) (Belpedio, Lisa) (Entered: 07/11/2012) |
| 07/30/2012 | 30 | ELECTRONIC NOTICE OF RESCHEDULING TIME OF STATUS CONFERENCE. Status Conference time reset for 8/9/2012 at 10:15AM before District Judge Timothy S Hillman. (Castles, Martin) (Entered: 07/30/2012) |
| 07/30/2012 | 31 | SECOND ELECTRONIC NOTICE OF RESCHEDULING. Status Conference DAY reset for 8/8/2012 at 2:45PM in Courtroom 2 - Worcester before District Judge Timothy S Hillman. (Dft's counsel informed the court that they were unavailable on 8/9/12 in the AM)(Castles, Martin) (Entered: 07/30/2012) |
| 08/06/2012 | 32 | ELECTRONIC NOTICE OF RESCHEDULING. Status Conference reset for 8/8/2012 at 3:00PM in Courtroom 2 - Worcester before District Judge Timothy S Hillman. (Castles, Martin) (Entered: 08/06/2012) |
| 08/09/2012 | 33 | ELECTRONIC Clerk's Notes for proceedings held before District Judge Timothy S Hillman: Status Conference held on 8/9/2012, Case called, |

| | | |
|---|---|---|
| | | Counsel appear by telephone for status conference, Parties inform the Court of the status of the case, Discovery is ongoing, Parties have agreed to the filing dates for Markman briefs, Court orders opening Markman briefs are due by 8/30/12, Responsive briefs are due by 9/20/12, Court sets Markman hearing date, ( Markman Hearing set for 10/11/2012 at 10:00AM in Courtroom 2 - Worcester before District Judge Timothy S Hillman). (Court Reporter: Shirley Riga (The Varallo Group) 508-753-9282) (Attorneys present: Kramer,Silvia,Dodge/Scott) (Castles, Martin) (Entered: 08/09/2012) |
| 08/30/2012 | 34 | Markman Brief by Inline Plastics Corp.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Dodge, Deborah) (Entered: 08/30/2012) |
| 08/30/2012 | 35 | Markman Brief by EasyPak, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(Scott, Craig) (Entered: 08/30/2012) |
| 08/31/2012 | 36 | NOTICE to Counsel. Deadline for the parties to confer and advise the Court as to the timing and procedure of the claims construction hearing pursuant to L.R.16.6(A)(3) and for the parties to prepare and file a joint claim construction and prehearing statement that identifies both agreed and disputed claim terms is extended to October 4, 2012. (Belpedio, Lisa) (Entered: 08/31/2012) |
| 09/14/2012 | 37 | NOTICE of Appearance by Elizabeth Anderson Spinney on behalf of Inline Plastics Corp. (Spinney, Elizabeth) (Entered: 09/14/2012) |
| 09/20/2012 | 38 | Reply to Claim Construction Brief by Inline Plastics Corp.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16)(Cotta, Daniel) Modified docket text on 9/21/2012 (Burgos, Sandra). (Entered: 09/20/2012) |
| 09/20/2012 | 39 | Reply to Preliminary Claim Construction Briefs by EasyPak, LLC. (Scott, Craig) (Entered: 09/20/2012) |
| 10/02/2012 | 40 | NOTICE of Appearance by Daniel E. Ostrach on behalf of EasyPak, LLC (Ostrach, Daniel) (Entered: 10/02/2012) |
| 10/04/2012 | 41 | Joint Claim Construction and Prehearing Statement by Inline Plastics Corp.. (Spinney, Elizabeth) (Entered: 10/04/2012) |
| 10/10/2012 | 42 | ELECTRONIC NOTICE OF RESCHEDULING TIME OF MARKMAN HEARING. Markman Hearing time reset for 10/11/2012 at 9:00AM in Courtroom 2 - Worcester before District Judge Timothy S Hillman. (Castles, Martin) (Entered: 10/10/2012) |
| 10/11/2012 | 43 | ELECTRONIC Clerk's Notes for proceedings held before District Judge Timothy S Hillman: Markman Hearing held on 10/11/2012, Case called, Counsel appear for Markman hearing, Court hears arguments of counsel, Court takes matter under advisement. (Court Reporter: Marianne Kusa-Ryll at justicehill@aol.com)(Attorneys present: |

| | | Silvia,Kramer/Scott,Ostrach) (Castles, Martin) (Entered: 10/11/2012) |
|---|---|---|
| 10/17/2012 | 44 | NOTICE of Withdrawal of Appearance by Deborah H. Dodge (Dodge, Deborah) (Entered: 10/17/2012) |
| 10/17/2012 | 45 | E-Mail Notice re docket entry# 44 originally issued on 10/17/2012 returned as undeliverable. Name of Addressee: Gabriel McCool. The ECF Help Desk has contacted the law firm on record, who advised that the attorney is no longer employed by that firm. The attorneys email address has been removed from the database to prevent the return of additional undeliverable email notices. (Burgos, Sandra) (Entered: 10/17/2012) |
| 10/24/2012 | 46 | NOTICE of Withdrawal of Appearance by Gabriel McCool (McCool, Gabriel) (Entered: 10/24/2012) |
| 01/22/2013 | 47 | District Judge Timothy S Hillman: ORDER entered. MEMORANDUM AND ORDER ON CLAIM CONSTRUCTION.(Castles, Martin) (Entered: 01/22/2013) |
| 01/22/2013 | 48 | ELECTRONIC NOTICE of Hearing. Status Conference set for 3/7/2013 at 3:00PM in Courtroom 2 - Worcester before District Judge Timothy S Hillman. (Castles, Martin) (Entered: 01/22/2013) |
| 03/07/2013 | 49 | ELECTRONIC Clerk's Notes for proceedings held before District Judge Timothy S Hillman: Status Conference held on 3/7/2013, Case called, Counsel appear for status conference, Parties inform the Court of the status of discovery and request additional time to complete discovery and to extend the related scheduling order deadlines, Court grants request and sets the following scheduling order deadlines, ( Further Status Conference set for 6/7/2013 at 3:00PM in Courtroom 2 - Worcester before District Judge Timothy S Hillman, Fact Discovery to be completed by 6/7/2013, Plaintiff's expert designations by 7/12/13, Plaintiff's expert depositions to be completed by 9/6/13, Defendant's expert designations by 8/12/13, Defendant's expert depositions to be completed by 9/6/13, Dispositive Motions due by 11/8/2013. (Court Reporter: Marianne Kusa-Ryll at justicehill@aol.com.(Attorneys present: Kramer,Silvia/Scott) (Castles, Martin) (Entered: 03/11/2013) |
| 05/31/2013 | 50 | ELECTRONIC NOTICE OF RESCHEDULING. Status Conference reset for 6/12/2013 at 11:15AM in Courtroom 2 - Worcester before District Judge Timothy S Hillman. (Castles, Martin) (Entered: 05/31/2013) |
| 06/11/2013 | 51 | ELECTRONIC NOTICE OF RESCHEDULING TIME OF STATUS CONFERENCE. Status Conference TIME reset for 6/12/2013 at 11:30AM in Courtroom 2 - Worcester before District Judge Timothy S Hillman. (Castles, Martin) (Entered: 06/11/2013) |
| 06/12/2013 | 52 | ELECTRONIC Clerk's Notes for proceedings held before District Judge Timothy S Hillman: Status Conference held on 6/12/2013, Case called, Counsel appear by telephone for status conference, Parties inform the Court of the status of discovery and request additional time to complete fact discovery as explained in open court, Parties request the Court extend all scheduling order deadlines by 60 days, Court grants request and order all scheduling order deadlines be extend by 60 days, Amnended scheduling |

| | | order deadlines are as follows: A further Status Conference is set for 9/10/2013 at 4:30PM in Courtroom 2 - Worcester before District Judge Timothy S Hillman, Fact Discovery to be completed by 8/7/2013, Plaintiff's expert designations due by 9/12/13, Plaintiff's expert depositions to be completed by 11/6/13, Defendant's expert designations due by 10/11/13, Defendant's expert depositions to be completed by 11/6/13, Dispositive Motions due by 1/8/2014, Parties agree to a referral to a Magistrate Judge for mediation/settlement conference, Case to be referred to a Boston Magistrate Judge for mediation, (Court Reporter: Marianne Kusa-Ryll at justicehill@aol.com)(Attorneys present: Kramer,Silvia/Scott,Ostrach) (Castles, Martin) (Entered: 06/12/2013) |
|---|---|---|
| 06/12/2013 | 53 | District Judge Timothy S Hillman: ELECTRONIC ORDER entered. REFERRING CASE to Alternative Dispute Resolution. Case is referred to a Boston Magistrate Judge for mediation.(Castles, Martin) (Entered: 06/12/2013) |
| 06/13/2013 | 54 | Notice of assignment to ADR Provider. Judge Marianne B. Bowler appointed.(Garvin, Brendan) (Entered: 06/13/2013) |
| 06/13/2013 | 55 | ELECTRONIC NOTICE of Hearing. Alternative Dispute Resolution Hearing set for 8/21/2013 10:00 AM in Courtroom 25 before Magistrate Judge Marianne B. Bowler. Counsel and principals are ORDERED to be present and to have full settlement authority. A brief mediation memorandum addressing both the merits of the case and the filing party's settlement position should be submitted to the court via facsimile to (617) 204-5833 or via email as an attachment to Eileen_Feeney@mad.uscourts.gov. The mediation memo should be marked "Confidential - Not for docketing" and is not to be served upon opposing parties. Counsel are asked to accommodate this date. In the event that you believe the case is not ripe for mediation at this time contact the Courtroom Deputy. But if the date poses a serious conflict, please do NOT contact the Courtroom Deputy directly regarding mediation scheduling. Counsel are to confer with opposing counsel and FILE AN ASSENTED-TO MOTION TO CONTINUE the mediation, including therein several proposed dates for which all counsel and principals are available. (Garvin, Brendan) (Entered: 06/13/2013) |
| 08/13/2013 | 56 | ELECTRONIC NOTICE OF RESCHEDULING Alternative Dispute Resolution Hearing set for 8/21/2013 11:00 AM in Courtroom 25 before Magistrate Judge Marianne B. Bowler. ***NOTE TIME CHANGE ONLY***(Garvin, Brendan) (Entered: 08/13/2013) |
| 08/29/2013 | 57 | Joint MOTION for Extension of Time *to Extend the Schedule* by EasyPak, LLC.(Scott, Craig) (Entered: 08/29/2013) |
| 08/30/2013 | 58 | District Judge Timothy S Hillman: ELECTRONIC ORDER entered granting 57 Motion for Extension of scheduling order deadlines. (Castles, Martin) (Entered: 08/30/2013) |
| 08/30/2013 | 59 | District Judge Timothy S Hillman: ORDER entered. AMENDED SCHEDULING ORDER: Status Conference reset for 10/21/2013 at 2:45PM in Courtroom 2 - Worcester before District Judge Timothy S |

| | | |
|---|---|---|
| | | Hillman. Plaintiff's expert designations due by 10/28/13, Plaintiff's expert depositions to be completed by 12/23/13, Defendant's expert designations due by 11/25/13, Defendant's expert depositions to be completed by 12/23/13, Dispositive Motions due by 2/24/2014(Castles, Martin) (Entered: 08/30/2013) |
| 09/05/2013 | 61 | REPORT of Alternative Dispute Resolution Provider (Garvin, Brendan) (Entered: 09/05/2013) |
| 10/04/2013 | 62 | NOTICE of Withdrawal of Appearance by Daniel E. Ostrach (Ostrach, Daniel) (Entered: 10/04/2013) |
| 10/14/2013 | 63 | NOTICE of Appearance by Adam P. Samansky on behalf of Inline Plastics Corp. (Samansky, Adam) (Entered: 10/14/2013) |
| 10/14/2013 | 64 | MOTION INLINE PLASTICS CORP.S MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANTS COUNTERCLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT ON INLINES INFRINGEMENT CLAIM UNDER RULE 54(B) by Inline Plastics Corp..(Samansky, Adam) (Entered: 10/14/2013) |
| 10/14/2013 | 65 | MEMORANDUM in Support re 64 MOTION INLINE PLASTICS CORP.S MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANTS COUNTERCLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT ON INLINES INFRINGEMENT CLAIM UNDER RULE 54(B) filed by Inline Plastics Corp.. (Attachments: # 1 Exhibit A)(Samansky, Adam) (Entered: 10/14/2013) |
| 10/21/2013 | 66 | District Judge Timothy S Hillman: ELECTRONIC ORDER entered. ORDER Canceling Deadline. The status conference scheduled for 2:45PM on 10/21/13 is hereby canceled. The court will be scheduling the matter for a hearing on the pending motion for entry of judgment, after it becomes ripe.(Castles, Martin) (Entered: 10/21/2013) |
| 10/21/2013 | 67 | NOTICE of Appearance by Anastasia A. Dubrovsky on behalf of EasyPak, LLC (Dubrovsky, Anastasia) (Entered: 10/21/2013) |
| 10/28/2013 | 68 | Opposition re 64 MOTION INLINE PLASTICS CORP.S MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANTS COUNTERCLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT ON INLINES INFRINGEMENT CLAIM UNDER RULE 54(B) filed by EasyPak, LLC. (Attachments: # 1 Exhibit A)(Scott, Craig) (Entered: 10/28/2013) |
| 10/30/2013 | 69 | Assented to MOTION for Leave to File *REPLY BRIEF IN SUPPORT OF INLINE PLASTICS CORP.S MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANTS COUNTERCLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT ON INLINES INFRINGEMENT CLAIM UNDER RULE 54(B)* by Inline Plastics Corp..(Samansky, Adam) (Entered: 10/30/2013) |

| | | |
|---|---|---|
| 10/31/2013 | 70 | District Judge Timothy S Hillman: ELECTRONIC ORDER entered granting 69 Motion for Leave to File reply. Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. (Castles, Martin) (Entered: 10/31/2013) |
| 11/06/2013 | 71 | NOTICE of Appearance by Peter J. Cuomo on behalf of Inline Plastics Corp. (Cuomo, Peter) (Entered: 11/06/2013) |
| 11/06/2013 | 72 | REPLY to Response to 64 MOTION INLINE PLASTICS CORP.S MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANTS COUNTERCLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT ON INLINES INFRINGEMENT CLAIM UNDER RULE 54(B) filed by Inline Plastics Corp.. (Cuomo, Peter) (Entered: 11/06/2013) |
| 11/12/2013 | 73 | MOTION for Leave to File *Amended Invalidity Contentions* by EasyPak, LLC.(Scott, Craig) (Entered: 11/12/2013) |
| 11/12/2013 | 74 | MEMORANDUM in Support re 73 MOTION for Leave to File *Amended Invalidity Contentions* filed by EasyPak, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Scott, Craig) (Entered: 11/12/2013) |
| 11/26/2013 | 75 | Opposition re 73 MOTION for Leave to File *Amended Invalidity Contentions* filed by Inline Plastics Corp.. (Attachments: # 1 Exhibit A)(Samansky, Adam) (Entered: 11/26/2013) |
| 11/27/2013 | 76 | Assented to MOTION for Leave to File *a Reply Brief* by EasyPak, LLC.(Scott, Craig) (Entered: 11/27/2013) |
| 12/02/2013 | 77 | District Judge Timothy S Hillman: ELECTRONIC ORDER entered granting 76 Motion for Leave to File reply. Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. (Castles, Martin) (Entered: 12/02/2013) |
| 12/05/2013 | 79 | MOTION to Continue *or in the Alternative to Extend Expert Discovery Deadlines* by Inline Plastics Corp..(Samansky, Adam) Modified on 12/6/2013 (Burgos, Sandra). (Entered: 12/05/2013) |
| 12/06/2013 | 80 | REPLY to Response to 73 MOTION for Leave to File *Amended Invalidity Contentions* filed by EasyPak, LLC. (Scott, Craig) (Entered: 12/06/2013) |
| 12/19/2013 | 81 | Opposition re 79 MOTION for Extension of Time to Complete Discovery filed by EasyPak, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Scott, Craig) (Entered: 12/19/2013) |
| 01/10/2014 | 82 | ELECTRONIC NOTICE Setting Hearing on Motion 73 MOTION for Leave to File *Amended Invalidity Contentions*, 79 MOTION for Extension of Time to Complete Discovery, and 64 MOTION INLINE PLASTICS CORP.S MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANTS COUNTERCLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT ON INLINES INFRINGEMENT CLAIM UNDER RULE |

| | | 54(B) : Motion Hearing set for 1/16/2014 at 10:00AM in Courtroom 2 - Worcester before District Judge Timothy S Hillman. (Castles, Martin) (Entered: 01/10/2014) |
|---|---|---|
| 01/14/2014 | 83 | ELECTRONIC NOTICE Resetting Hearing on Motion 73 MOTION for Leave to File *Amended Invalidity Contentions*, 79 MOTION for Extension of Time to Complete Discovery, 64 MOTION INLINE PLASTICS CORP.S MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANTS COUNTERCLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT ON INLINES INFRINGEMENT CLAIM UNDER RULE 54(B) : Motion Hearing reset for 1/23/2014 at 11:00AM in Courtroom 2 - Worcester before District Judge Timothy S Hillman. (Castles, Martin) (Entered: 01/14/2014) |
| 01/21/2014 | 84 | Notice of Supplemental Authorities re 64 MOTION INLINE PLASTICS CORP.S MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANTS COUNTERCLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT ON INLINES INFRINGEMENT CLAIM UNDER RULE 54(B) filed by Inline Plastics Corp.. (Attachments: # 1 Exhibit 1)(Samansky, Adam) (Entered: 01/21/2014) |
| 01/23/2014 | 85 | ELECTRONIC Clerk's Notes for proceedings held before District Judge Timothy S Hillman: Motion Hearing held on 1/23/2014 re 64 MOTION INLINE PLASTICS CORP.S MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANTS COUNTERCLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT ON INLINES INFRINGEMENT CLAIM UNDER RULE 54(B) filed by Inline Plastics Corp., 73 MOTION for Leave to File *Amended Invalidity Contentions* filed by EasyPak, LLC, 79 MOTION for Extension of Time to Complete Discovery filed by Inline Plastics Corp., Case called, Counsel appear for motion hearing, Court hears arguments of counsel, Court rules taking under advisement 64 Motion ; taking under advisement 73 Motion for Leave to File Document ; taking under advisement 79 Motion for Extension of Time to Complete Discovery. (Court Reporter: Marianne Kusa-Ryll at justicehill@aol.com)(Attorneys present: Scott,Dubrovsky/Kramer,Samansky) (Castles, Martin) (Entered: 01/23/2014) |
| 01/24/2014 | 86 | District Judge Timothy S Hillman: ORDER entered granting 64 Motion FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANT'S COUNTERCLAIMS. (Castles, Martin) (Entered: 01/24/2014) |
| 01/24/2014 | 87 | District Judge Timothy S Hillman: ELECTRONIC ORDER entered finding as moot 73 Motion for Leave to File Document and finding as moot 79 Motion for Extension of Time to Complete Discovery. (Castles, Martin) (Entered: 01/24/2014) |
| 02/03/2014 | 88 | Transcript of Markman Hearing held on October 11, 2012, before Judge Timothy S. Hillman. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Marianne |

| | | |
|---|---|---|
| | | Kusa-Ryll at justicehill@aol.com Redaction Request due 2/24/2014. Redacted Transcript Deadline set for 3/6/2014. Release of Transcript Restriction set for 5/5/2014. (Scalfani, Deborah) (Entered: 02/03/2014) |
| 02/03/2014 | 89 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 02/03/2014) |
| 02/04/2014 | 90 | District Judge Timothy S Hillman: ORDER entered. JUDGMENT of non-infringement.(Castles, Martin) (Entered: 02/04/2014) |
| 02/14/2014 | 91 | NOTICE OF APPEAL to the Federal Circuit by Inline Plastics Corp. Filing fee: $ 505, receipt number 0101-4863658 Fee Status: Filing Fee paid. US District Court Clerk to deliver official record to Court of Appeals by 3/6/2014. (Samansky, Adam) (Entered: 02/14/2014) |
| 02/14/2014 | 92 | MOTION to Stay by EasyPak, LLC.(Scott, Craig) (Entered: 02/14/2014) |
| 02/14/2014 | 93 | Transcript of Motion Hearing held on January 23, 2014, before Judge Timothy S. Hillman. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Marianne Kusa-Ryll at justicehill@aol.com Redaction Request due 3/7/2014. Redacted Transcript Deadline set for 3/17/2014. Release of Transcript Restriction set for 5/15/2014. (Scalfani, Deborah) (Entered: 02/14/2014) |
| 02/14/2014 | 94 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 02/14/2014) |
| 02/14/2014 | 95 | District Judge Timothy S Hillman: ELECTRONIC ORDER entered granting 92 Motion to Stay. (Castles, Martin) (Entered: 02/14/2014) |

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **INLINE PLASTICS CORP.,** <br> **a Connecticut corporation,** <br><br> **Plaintiff,** <br><br> v. <br><br> **EASYPAK, LLC,** <br> **a Massachusetts corporation,** <br><br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    **CIVIL ACTION No. 11-cv-11470-TSH** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER ON CLAIM CONSTRUCTION
### January 22, 2013

**HILLMAN, J.**

This is a patent infringement suit involving thermoplastic food containers. Plaintiff Inline

Plastics Corp. ("Inline") seeks a judgment that Defendant EasyPak, LLC ("EasyPak"), a

competing manufacturer, infringes upon one or more claims of its patents: U.S. Patent No.

7,118,003 (filed July 21, 2004) (the "'003 Patent") and U.S. Patent No. 7,073,680 (filed Feb. 24,

2005) (the "'680 Patent").[1] EasyPak seeks declarations of non-infringement and invalidity of

Inline's patents under 35 U.S.C. §§ 102-03, 112.[2] On October 11, 2012, the Court held a

---

[1] The '003 and '680 Patents are utility patents that are generally granted to an applicant that "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. *See also Int'l Seaway Trading corp. v. Walgreens Corp.*, 589 F.3d 1233, 1238 (Fed. Cir. 2009) (noting the differences between utility patents (like those in suit) and design patents under 35 U.S.C. § 171).

[2] Section 102 pertains to the patentability requirement of *novelty*, e.g., a patentee may exclude others from the use of their patent unless the subject-matter of "the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." 35 U.S.C. § 102(b) (2000). Section 103 pertains to the patentability requirement of *non-obviousness*, i.e., whether or not the subject-matter at issue would have been obvious "to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. §

*Markman* hearing and listened to the parties' proposed constructions for the following disputed terms: (1) "frangible section;" (2) "frangible section, which upon severing;" (3) "tamper evident bridge;" (4) tamper-resistant/evident container;" and (5) "lock" (Docket No. 41).

## I. Background

The patents are entitled: "Tamper Resistant Container with Tamper-Evident Feature and Method of Forming the Same." Inline is the assignee of both patents. Substantively, the patents share similar descriptions and drawings.[3] The basic idea behind the patents is a clear, one-piece thermoplastic "clamshell" packaging system, designed to store and display food for the consumer. '003 Patent col.1 ll.35-48; '680 patent col.1 ll.37-50. The patents also incorporate certain structural mechanisms designed to not only reduce pilferage but also indicate whether the container has been tampered with prior to consumption. '003 Patent col.1 l.56-col.2 l.3; '680 Patent col.1 l.58-col.2 l.5.

## II. Legal Framework

Claim construction is a question of law decided by the courts. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S. Ct. 1384 (1996). The underlying principle of claim construction is that a claim is to be given its "customary meaning" or "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). When courts construe a claim's meaning, they follow a hierarchical order of sources by magnitude of deference beginning first with "the words of the claims themselves,

---

103(a) (2012). Section 112 pertains to patent specification requirements and notes that it must: "contain a written description of the invention, . . . , in . . ., clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, . . ., to make and use the same, and shall set forth the best mode contemplated by the inventor . . . of carrying out the invention." 35 U.S.C. § 112 (2012).

[3] The primary difference between the patents is the "lock" mechanism claimed in the '680 Patent. *See, e.g.*, '680 Patent, claims: **1-2**, **4-6**, **8**, and **23**.

[then] the remainder of the specification, [followed by] the prosecution history, and [finally] extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* at 1314 (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

### A. *The Claim Language*

The patent claim establishes the framework that "define[s] the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water*, 381 F.3d at 1115. In many instances, how a term is expressly used "within the claim provides a firm basis for construing the term." *Phillips*, 415 F.3d at 1314. Courts find that claim terms used regularly throughout a patent indicate a consistent meaning, i.e., the meaning of a term in one claim is likely the meaning of that same term in another. *Id.* In addition, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1315. Furthermore, patent applicants may act as "lexicographers" of their own proffered terms by "imbu[ing] new or old terms with a different meaning than they would otherwise have to a person of ordinary skill in the art." *Innova/Pure Water*, 381 F.3d at 1116.

### B. *The Specification Language*

It is well-established law that "the claims '[are] read in view of the specification, of which they are a part.'" *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, --- F.3d ---, No. 2011-1329, 2012 WL 3329695, at *10 (Fed. Cir. Aug. 15, 2012) (quoting *Markman*, 52 F.3d at 979). "[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." *Phillips*, 415 F.3d at 1316. Further, the specification language serves the "purpose of better understanding the meaning of the claim; but

not for the purpose of changing it, and making it different from what it is." *White v. Dunbar*, 119 U.S. 47, 51-52, 7 S. Ct. 72 (1886); *On Demand Mach. Corp. v. Ingram Indus.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006) ("[C]laims cannot be of broader scope than the invention that is set forth in the specification."); *Phillips*, 415 F.3d at 1316 ("[C]laims must be construed so as to be consistent with the specification, of which they are a part.").

Courts must still temper the extent to which they defer to the language of the claim specifications. *See Phillips*, 415 F.3d at 1323 (noting that the specification should be used only for claim interpretation and that courts should avoid "importing limitations from the specifications into the claim"); *see also Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("[T]here is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification."). Although where a court draws this line "can be a difficult one to apply in practice[,] . . . . the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323. "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. . . ." and therefore, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

### C.  *The Patent Prosecution History*

Like the claim and specification language, how a patent applicant construed its claims during patent prosecution is also indicative of a term's meaning. The prosecution history is the

final record of negotiation between the applicant and the United States Patent and Trademark Office ("PTO") and refers to the prior art throughout the patent examination. *Phillips*, 415 F.3d at 1317. Further, it "inform[s] the meaning of the claim language by demonstrating how the inventor understood the invention." *Id.*

### D. *Extrinsic Evidence*

The final level of the *Phillips* framework is extrinsic evidence, which is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* This type of evidence helps guide courts in "determin[ing] what a person of ordinary skill in the art would understand claim terms to mean." *Id.* at 1319. "[C]onsultation of extrinsic evidence is particularly appropriate to ensure that his or her understanding of the technical aspects of the patent is not entirely at variance with the understanding of one skilled in the art." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999).

Extrinsic sources, however, are not without drawbacks. This type of evidence is lacking due to the fact that it is wholly separate from the ideas that form the patent and because it is consulted in an ex post–rather than ex ante–manner from when the patent was first developed and prosecuted. *See Phillips*, 415 F.3d at 1318. Because an extrinsic source is examined during patent litigation, it may be inherently fraught with bias or lack the requisite expertise displayed by a person with ordinary skill in the art. *Id.* It further follows that litigation can create a perverse incentive for the parties to procure and proffer a "virtually unbounded universe" of evidence, all of which "leav[es] the court with the considerable task of filtering the useful [ ] evidence from the fluff." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595, 113 S. Ct. 2786 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in

evaluating it."). Finally, extrinsic evidence may undermine the "public notice function of patents" because it could be used to change the meaning of claims without the input of the patentees or the PTO. *Id.* at 1318-19.

<h3 align="center">III.  <u>Analysis</u></h3>

**A.**  *"Frangible section" and "frangible section, which upon severing"*

The proposed constructions of the disputed claims are as follows:

| DISPUTED CLAIMS | INLINE'S CONSTRUCTION | EASYPAK'S CONSTRUCTION |
| --- | --- | --- |
| '003 Patent: 2, 4, 5, 10, 13-14, 17, 20-23 <br><br> '680 Patent: 2, 10, 17, 22 | A section of material that includes at least one score line or at least one perforation line. | A removable tear strip. |



FIG. 11

The Court construes "frangible section" and "frangible section, which upon severing" together because both terms refer to identical structures and form the gravamen of this entire claim construction dispute. *See Markman* Hr'g Tr. 37:16-38:6, Oct. 11, 2012. During the *Markman* proceedings, Inline presented the Court with examples of the disputed products: the TS64 (Inline) and the WT64-F-TE (EasyPak). Hr'g Exs. 1-2. Although EasyPak's product plays no role in informing the Court on claim construction, it remains instructive as to why a dispute between the parties even exists. Hr'g Tr. 9:12-13, 10:22-24. At first glance, the products share distinct functional similarities as both are thermoplastic, tamper resistant, "clamshell" containers. Further inspection, however, reveals clear differences in form. For example, in order to open

EasyPak's container, the consumer must disconnect a single perforated line located along a hinge that attaches the lid and base. Compl. Ex. C (Docket No. 1-3). Unlike EasyPak's container, in order to open Inline's product the consumer must disconnect and remove the tamper-evident "frangible section"[4] created by two perforated score lines located along a hinge that attaches the lid and base. *See supra* '003 Patent fig.11; '680 Patent fig.11 (emphasis added).

EasyPak argues that the "frangible section" is removable, i.e., the preferred embodiment outlined by the claims, specifications, and prosecution history. If the Court were to accept its proposed construction of a "removable tear strip," then the logical implication would be that the '003 and '680 Patents are limited to an embodiment that uses at least two perforated score lines. Conversely, Inline chides EasyPak for "suggest[ing] that [this Court] look to only specific embodiments, figures and description[s] in complete disregard of the clear and express language of the [patents], which provide[] [for] a broader disclosure." Inline's Reply Claim Construction Br. at 13 (Docket No. 38). Inline argues that the "frangible section" is severable[5] and notes that the express language of the claims supports this embodiment under the doctrine of claim differentiation and alternatively posits that testimony during patent prosecution neither clearly nor unambiguously narrowed the scope of the claim language under the doctrine of prosecution history disclaimer. If the Court were to accept Inline's proposed construction of "a section of material that includes at least one score line or at least one perforation line," then the implication would be that EasyPak's product violates both patents. Essentially, however, Inline commits the

---

[4] The TS64 instructs the consumer to "pull tab, lift corner." Hr'g Tr. Ex. 1.

[5] During the *Markman* hearing, Inline argued that:

> In this instances, the single score line could be severed. We're not removing anything. It could be severed to create the pair of projections. I mean, look at the container. If this doesn't read like what's going on here, I don't know what else does. Single score line could be severed to create a pair of projections. Not removed. Simply severed, which means, in another context broken.

Hr'g Tr. 39:19-40:1.

same transgression it accuses EasyPak of; it would have this Court validate a secondary and inconspicuous embodiment in complete disregard of the overwhelming evidence to the contrary.

First, after analyzing the patents in suit under the *Phillips* methodology, it is apparent that the doctrine of claim differentiation does not apply. 415 F.3d at 1314-19. This tenet of claim construction creates the rebuttable presumption that "limitations stated in dependent claims are not to be read into the independent claim from which they depend." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999). Stated differently, "each claim in a patent has a different scope." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006). Here, Inline argues that if the limitation set forth in claim **4**, wherein the "frangible section" is "delimited *at least* in part by a pair of parallel score lines," applied to independent claim **2**, which is silent on the number of score lines, then claim **2** would render claim **4** superfluous. *See, e.g.*, Hr'g Tr. 30:10-24. Thus, because the limitation from claim **4** does not apply in claim **2**, the "frangible section" set out in claim **2** could encompass an embodiment that includes only one score line.

If the analysis ended there, Inline's argument would be valid. The doctrine of claim differentiation, however, is not a "hard and fast rule of construction," *Kraft Foods v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000), and in turn, "can not broaden claims beyond their *correct* scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence." *Multiform Desiccants Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998) (emphasis added). Determining a patent's appropriate scope is especially important where, as here, a patent is ambiguous or conflates different terms. Courts are permitted to clarify a disputed term's ultimate meaning. *See Markman*, 517 U.S. at 372. Accordingly, in

order to articulate the proper construction of "frangible section," the Court must carefully consider the totality of intrinsic and extrinsic evidence available.

The patents mention "*frangible* section"[6] fourteen times throughout their respective claims. Eight of those instances note that the container is capable of being opened only "upon *severing*"[7] the "frangible section." '003 Patent col.9 l.3, l.38, col. 10 l.12; l.27, l.38; '680 Patent col.10 l.35, col.11 l.14, col.12 l.3. Another reference, however, alludes to opening the container upon "*removal*"[8] of the "frangible section." '680 Patent col.12 l.37. Thus, reviewing the language of the claims in the most objective light possible, discrepancies exist with how "frangible section" is defined.

Unlike the ambiguities found in the claims, the specifications provide substantial evidence for accurately defining "frangible section." The patents refer to "frangible section" ninety times throughout their specifications.[9] Forty-two of those references explicitly state that the "frangible section" must be removed from the container in order to disconnect the lid and base.[10] Nearly every drawing proffered by the patents shows the "frangible section" attached to the container by two parallel score lines or, alternatively, shows it completely removed or in the process of removal. Furthermore, the patents dedicate nine paragraphs to demonstrate for

---

[6] "Frangible" means: "readily or easily broken." *Frangible Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/frangible (last visited Jan. 7, 2013).

[7] "Sever" means: "to put or keep apart; divide; especially: to remove (as a part) by or as if by cutting." *Sever Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/sever (last visited Jan. 7, 2013).

[8] "Remove" means: "to move by lifting, pushing aside, or taking away or off; to get rid of: eliminate." *Remove Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/remove (last visited Jan. 7, 2013).

[9] The specification refers to "frangible section" interchangeably with: "pull strip," "frangible strip," "strip," and "frangible pull strip."

[10] The specifications also note that the "frangible section" can be "detached." '003 Patent col.6 l.46; '680 Patent col.7 l.9. "Detach" means: "to separate especially from a larger mass and usually without violence or damage; disengage." *Detach Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/detach (last visited Jan. 7, 2013).

"[t]hose skilled in the art" the intricacies of the "double scoring blades" designed to imprint the parallel score lines that delimit the "frangible section," however, those paragraphs never mention an embodiment utilizing a single score line.[11]

The only evidence Inline provides from the specification, i.e., the "best guide to [determine] the meaning of a disputed term," to support a single score line embodiment states that "the integral hinge **16** could be formed with a single score line or perforation line, rather than a pair of score lines." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); '003 Patent col.6 ll.32-34; '680 Patent col.6 ll.63-65.[12] Moreover, while Inline argues that EasyPak oversteps by trying "to read limitations from a preferred embodiment described in the specification . . . into the claims," this is precisely what Inline posits under its alternative embodiment, albeit with fewer "evidentiary rungs" upon which to hang its hat. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). The repetitive reliance on this isolated sentence falls short for one reason: its clarity cannibalizes Inline's argument.

Here, "hinge **16**" is formed when "arms **36** and **38** . . . [are] joined together by a common attachment to frangible strip **18**." '003 Patent col.6 ll.21-22; '680 Patent col.6 ll.52-53. In fact, this "frangible section" is removed from "hinge **16**." '003 Patent col.6 ll.32-33; '680 Patent col.5 ll. 66-67. "Hinge **16**," discussed further under the "tamper evident bridge" analysis, *see infra* Part III.B, is not–and cannot be–"frangible section or pull strip **18**." The hinge and "frangible section," are wholly separate, and thus, mutually exclusive elements of the container. The Court

---

[11] The specifications also explain in great detail the preferred process for obtaining the "desirable zipper-like effect" when removing the "frangible section." For example, the specifications note the length of the blades, the depth and angle at which the blades cut, and the number, shape, and space between perforations–all measured to the thousandth of an inch. '003 Patent col.7 l.1-col.8 l.3; '680 Patent col.7 ll.31-58.

[12] In the '680 Patent "hinge **116**" and "frangible pull strip **118**" result when the product changes shapes from a circular container into a rectangular one. '680 Patent col.8 ll.44-45.

finds nothing in the patents or elsewhere to rebut this fact. Therefore, Inline's claim differentiation argument in support of its alternative embodiment is unsupported.

Second, Inline's contention under the doctrine of prosecution history disclaimer is no more convincing. Inline contends that it never disavowed a broader construction of "frangible section" during patent prosecution and only could have done so if it "demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1381 (Fed. Cir. 2009) (citing *Innova/Pure Water*, 381 F.3d at 1117). In sum, Inline argues that but for some invocation to the contrary, claim scope could not have been disavowed during prosecution. This is incorrect.

Typically, courts apply the doctrine of prosecution history disclaimer "where the patentee has unequivocally disavowed a certain meaning to obtain his patent . . . and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003); *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988) (noting that the history serves to "exclude any interpretation that was disclaimed during prosecution"). This doctrine also prevents patentees from construing claims "one way in order to obtain their allowance and in a different way against accused infringers." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). Furthermore, "[i]n determining whether there has been a clear and unmistakable surrender of subject matter, the prosecution history must be examined as a whole" under an "objective standard." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1252 (Fed. Cir. 2000).

Here, the language and figures submitted in the Provisional Patent Application clearly display a "removable strip" or a "tear strip." *See, e.g.*, EasyPak's Claim Construction Br. Ex. F,

figs.2, 3a, 4b (Docket 35-6).[13] Inline officers and board members made specific declarations to the PTO in response to rejections under prior art that also explicitly reference a "removable strip" or a "tear strip." *See, e.g.*, Bruce Stein Decl. ¶ 7, Jan. 16, 2006 ("the containers in the above-identified patent application include a tear strip") (Docket No. 38-8); Edward A. Colombo Decl. ¶ 13, Jan. 17, 2006 ("If the tear strip is not removed from the container, it is extraordinarily difficult to remove the lid from the container without leaving behind significant evidence of tampering.") (Docket No. 38-9); August Lanzetta[14] Decl. ¶ 5, Feb. 24, 2006 ("By providing a cover that is very difficult to open without removing the tamper evident feature connecting the cover to the base portion, pilferage is substantially reduced.") (Docket No. 35-7). Inline refutes the strength these declarations played during prosecution by arguing that the PTO used only generalities when referring to the features that overcame prior rejections, thus an explicit disavowal of scope as to the removability of the "frangible section" never occurred. Inline's Reply Claim Construction Br. at 11. Examiners, however, are not required to elucidate every finding or conclusion on a "point-to-point" basis. *See Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3 1361, 1374 (Fed. Cir. 2005) ("An applicant's argument made during prosecution may lead to a disavowal of claim scope even if the Examiner did not rely on the argument."). Even upon an objective view, the declarations made during patent prosecution to surpass the prior art reveal a

---

[13] The initial Provisional Patent Application notes that "[i]t is envisioned and well within the scope of the subject disclosure that the integral hinge **16** could be formed with a single score line or perforation line, rather than a pair of score lines as illustrated." To reiterate, the "hinge" and "frangible section" are two separate elements. Thus, for the same reasons outlined in the discussion on claim differentiation, Inline's prosecution history disclaimer argument is without merit.

[14] The PTO stated that the Commercial success declaration of August Lanzetta was "sufficient" to overcome rejection and specifically noted that "[t]he container also includes a tamper evident feature, such as a tear strip, connecting the cover portion to the base portion." Inline's Reply Claim Construction Br. Ex. 4 (Docket No. 38-4). Inline latches on to the PTO's use of the phrase "such as" as evidence that the patent examiner recognized a broader construction, i.e., that the "frangible section" could also mean severable instead of just removable. Hr'g Tr. 21:10-21. After analyzing the actual language of the patents in conjunction with the prosecution history, however, it seems that the phrase "such as" was used not to broaden the functionality of the "frangible section" but rather to broaden its interchangeable terminology. *See supra* notes 4, 9.

definitive focus on the "removability" of the "frangible section" and thus clearly and unambiguously disavow any other embodiment to the contrary. The Court finds EasyPak's construction more persuasive and clarifies its construction by adding language reflecting the minimum number of required score lines. Accordingly, the Court construes "frangible section" to mean: "a removable tear strip, delimited by at least two severable score lines."

**B. *"Tamper evident bridge"***

The proposed constructions of the disputed claims are as follows:

| DISPUTED CLAIMS | INLINE'S CONSTRUCTION | EASYPAK'S CONSTRUCTION |
|---|---|---|
| '003 Patent: 1-2, 24 | Material that joins/connects a cover portion and a base portion of a container, which when severed, provides evidence that tampering has occurred. | A removable structure that connects the cover to the base portion. |



After reviewing the proposed constructions of "tamper evident bridge," it is clear that this dispute is nothing more than another avenue for Inline and EasyPak to inject arguments for the *severability* or *removability* of the "frangible section." *See supra* Part III.A. In support of its argument that the entire "tamper evident bridge" structure is removable, EasyPak contends that the doctrine of prosecution history disclaimer applies because Inline unequivocally disavowed the term's meaning during prosecution. *See Hockerson-Halberstadt, Inc. v. Avia Group Int'l,*

Case 1:14-cv-1305 Document 1-2 Page 30 Filed: 02/24/2014

*Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) ("The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct, such as designing around the claimed invention.").

Inline, however, asserts that an appropriate definition of "tamper evident bridge" may be gleaned from the intrinsic record found in the '003 Patent. *See* Inline's Claim Construction Br. at 13-14 (Docket No. 34); *see also Phillips*, 415 F.3d at 1314 (noting that the claims themselves "provide substantial guidance as to the meaning of particular claim terms"); *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1313 (Fed. Cir. 2007) (noting that claims must be "read in view of the specification" and that the "correct construction" is that which "most naturally aligns with the patent's description of the invention"). While the Court does not disagree with this argument, Inline further contends that the individual definitions of "tamper evident" and "bridge" are somehow sufficient to instruct the Court that the conjunctive term "tamper evident bridge" must be severable. *See, e.g.*, Inline's Claim Construction Br. at 13-14; Hr'g Tr. 13:20-22, 14:24-15:5, 42:8-13 ("tamper evident"), 13:17-19, 14:20-23, 26:3-4 ("bridge"); '003 Patent col.1 l.67-col.2 l.3. Because Inline and EasyPak's arguments are deficient in several ways, it remains squarely within the purview of the Court to establish the appropriate definition, even if it differs from what the parties propose. *See Markman*, 517 U.S. at 372.

First, EasyPak's prosecution history disclaimer argument is inapplicable to the construction of "tamper evident bridge." During prosecution, the PTO rejected the '003 Patent claims for obviousness, specifically "under 25 U.S.C. § 102(b) as being anticipated by Menshen (DE 7816352)" with regard to "a hinge joining the outwardly extending flange of the [lid] portion with the base portion, the hinge defining a frangible section." EasyPak's Claim

Construction Br. Ex. G (Docket No. 35-7). The Menshen Patent similarly disclosed "a hinge **11** defining a frangible section joining the outwardly extending flange of the [lid] portion with the base portion." *Id.* The frangible section disclosed by the Menshen Patent contained a single score line. *Id.* Only after the PTO's rejection was the term "tamper evident bridge" even added into the claims, without any defining language proposed in the specification. Inline's Reply Claim Construction Br. Ex. 1 (Docket No. 38-1); Hr'g Tr. 19:9-11 ("We said we're patentable because we had a tamper evident bridge and that's how we amended the claim.").

As precedent dictates, nothing prevents patentees from defining their own terms. *See Innova/Pure Water*, 381 F.3d at 1116. It is clear from the evidence, however, that the '003 Patent survived prosecutorial muster, in no small part, by the PTO mistakenly allowing Inline to introduce a new and ambiguous term in order to cloak a separate term clearly disclosed by prior art. In reality, the '003 Patent's "tamper evident bridge" and the "hinge defining a frangible section" disclosed by prior art are simply congruent ways of expressing identical structures in both form and function.[15] Nevertheless, a prosecution history disclaimer argument mischaracterizes this term because unlike the previous discussion on "frangible section," which determined whether a valid embodiment was disclaimed to the exclusion of another, here, no such "either-or" choice could have ever existed because the disputed embodiment was disclosed by prior art.

Second, the Court is left to follow the analytical rubric outlined by *Phillips*. The term "tamper evident bridge" is referenced in the claims of the '003 Patent three times. '003 Patent col.8 l.64, l.67, col.10 l.59. Again, the term is neither defined nor even mentioned in the

---

[15] Here, perhaps an appropriate analogy is akin to the Gershwin song "Let's Call the Whole Thing Off" whose famous refrain states: "You like to-may-toes and I like to-mah-toes." Fred Astaire & Ginger Rogers, "Let's Call the Whole Thing Off," *in* "Shall We Dance" (RKO Radio Pictures, Inc. 1937).

specification. Independent claim **1(c)** states that the "tamper evident bridge connect[s] the [lid] portion to the base portion." '003 Patent col.8 l.64. Dependent claim **2**, however, notes that the "tamper evident bridge" actually contains a "hinge" responsible for "joining . . . the [lid] portion with the base portion." '003 Patent col.8 l.67-col.9 ll.1-2; *cf.* Hr'g Tr. 13:16-19 ("[A] bridge is something that joins, you know, two things. In this instance, we're saying it connects the [lid] and the base portion."). This "hinge," in turn, contains the "frangible section." '003 Patent col.9 ll.2-3.

By contrast, the term "hinge" is referenced eighteen times in the claims and another thirty-two times in the specification. The specification states that the "hinge" is created when the "[u]pper and lower arms **36** and **38** . . . join[] together by a common attachment to frangible strip **18** to form hinge **16**." '003 Patent col.6 ll.20-22; *see supra* '003 Patent fig.3 (emphasis added). It is undeniable that this "hinge" is what forms the singular, "integral connection between [lid] portion **12** and base portion **14**.[16] '003 Patent col.5 ll.39-40. This clearly contradicts the definition of "tamper evident bridge" as outlined in the claims. The connection between lid and base terminates upon removal of "frangible strip **18**," thus, it follows logically that this structure only remains a "hinge," and more specifically, a tamper evident "hinge,"[17] until the strip is removed. '003 Patent col.6 ll.46-54; *see supra* '003 Patent fig.8 (emphasis added).

EasyPak's proposed construction errs by misinterpreting claim **24** which expressly states that the container cannot be opened without first removing "*a portion* of the tamper evident

---

[16] The specification states that the container "include[s] a hinge" that joins the lid and base and includes a frangible section that once broken allows for access to the contents inside. '003 Patent col.2 ll.28-39. The description of Figure **16** also notes that the container "[has] a base portion and a [lid] portion connected to each other by a hinge having a frangible section." '003 Patent col.4 ll.48-50. Furthermore, Claim **22** states that the lid, base, skirt, and hinge are contiguously created from a "single piece of material." '003 Patent col.10 ll.52-53.

[17] "Hinge" means: "a jointed or flexible device on which a door, lid, or other swing part turns; a flexible ligamentous joint." *Hinge Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/hinge (last visited Jan. 7, 2013).

bridge." '003 Patent col.10 ll.59-60 (emphasis added). This differs from EasyPak's contention that the "tamper evident bridge is a removable structure" when in fact only a specific segment of the structure, the "frangible section," is removable. *See* EasyPak's Reply Claim Construction Br. at 9 (Docket No. 39). Inline's proposed construction is an error of omission, i.e., it glosses over how the actual term "tamper evident bridge" is used throughout the '003 Patent in favor of an attenuated definition from language pertaining to "tamper-resistant/evident features." Inline's Claim Construction Br. at 13-14; '003 Patent col.1 l.67-col.2 l.3. Accordingly, the Court construes "tamper evident bridge" to mean: "a structure that connects the lid and base portions of the container and also contains a removable tear strip, delimited by at least two severable score lines, which once removed provides evidence that tampering has occurred."

## C. *"Tamper-Resistant/Evident Container"*

The proposed constructions of the disputed claims are as follows:

| DISPUTED CLAIMS | INLINE'S CONSTRUCTION | EASYPAK'S CONSTRUCTION |
|---|---|---|
| '003 Patent: 1-3, 7, 9, 17-18, 21, 25<br><br>'680 Patent: 1-9, 17-23, 25, 27 | Tamper-resistant container with tamper evident features, including structural elements that either deter unauthorized tampering or opening of the container or clearly indicate to the consumer whether unauthorized tampering or opening has occurred. | Rendering the contents of the container difficult to interfere with and providing obvious or easily seen evidence of such interference when it occurs. |

During the *Markman* hearing, Inline and EasyPak agreed to define "tamper-resistant/evident container" *conjunctively*, i.e., the container incorporates some "tamper-resistant" mechanisms and some "tamper evident" mechanisms, but those individual mechanisms incorporated therein are not required to be both tamper-resistant *and* tamper-evident. Hr'g Tr. 42:24-45:8. Although the Court agrees with Inline's basic underlying construction, it still

remains ambiguous, thus the Court must resolve the dispute. *Phillips*, 415 F.3d at 1312-13; *Markman*, 517 U.S. at 372.

Here, the specifications of the '003 and '680 Patents are the best evidence for instructing the Court on determining the ordinary and customary meaning of the disputed term. Specifically, the patents state that:

> . . . it is desirable to fabricate *containers* that include *features* which either *deter unauthorized tampering* or clearly *indicate* whether unauthorized tampering has occurred, *or both*. These tamper-resistant/evident features typically include structural elements which, when the container is tampered with or opened without authorization, enable the consumer to easily visually recognize such tampering so that the product can then be rejected.

'003 Patent col.1 ll.57-64; '680 Patent col.1 ll.59-64 (emphasis added). Accordingly, the Court construes "tamper-resistant/evident container" to mean: "a container incorporating structural elements designed to deter, indicate, or deter and indicate, unauthorized tampering or opening prior to consumption."

**D.** *"Lock"*

The proposed constructions of the disputed claims are as follows:

| DISPUTED CLAIMS | INLINE'S CONSTRUCTION | EASYPAK'S CONSTRUCTION |
| --- | --- | --- |
| '680 Patent: 1-2, 4-6, 8, 23 | A device or structure for non-permanently maintaining the peripheral flange of the cover adjacent to the upper peripheral edge of the base when the container is closed. | A secondary engagement mechanism inside the perimeter of the base portion that prevents tampering by sealing the cover to the base. |



FIG. 25

The *Markman* hearing revealed little dispute over the how the term "lock"[18] was used as a noun throughout the '680 Patent. The parties agreed that the "lock" operates as a "secondary engagement mechanism" for further sealing the peripheral flange of the lid to the peripheral edge of the base. Hr'g Tr. 48:4-8, 51:7-17. Following the rubric outlined by *Phillips*, independent claim **1(c)** supports the contention that the "lock" "maintain[s] the peripheral flange adjacent to the upper peripheral edge when the container is closed." 415 F.3d at 1314; '680 Patent col.10 ll. 29-30. The specification notes that the container "includes an engagement mechanism . . . maintaining the peripheral flange adjacent to the upper peripheral edge when the container is closed." '680 Patent col.2 ll.30-33. Moreover, the specification states that this secondary engagement mechanism "is non-permanent and facilitates the reattachment of the [lid] portion with the base portion." '680 Patent col.2 ll.51-53. Support for the "secondary engagement" language is also found in the prosecution history. Stein Decl. ¶ 17 ("We have further developed a second engagement mechanism to make our containers further tamper proof. Specifically, we have discovered that placing a lock . . . such as a male-female connector near the sealing interface to connect the cover to the base is advantageous.") (Docket No. 38-8).

---

[18] "Lock" means: "a fastening (as for a door) operated by a key or a combination." *Lock Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/lock (last visited Jan. 7, 2013).

Case 1:14-1305 Document 12 Page 36 Filed: 02/24/2014

EasyPak's proposed construction incorrectly limits the secondary engagement mechanism to a structure contained solely within the base. *Cf. supra* '680 Patent fig.25. Nothing from the evidence supports this embodiment. Therefore, Inline's proposed construction with the addition of the "secondary engagement" language controls. Accordingly, the Court construes the term "lock" to mean: "a secondary engagement mechanism for non-permanently maintaining the peripheral flange of the cover adjacent to the upper peripheral edge of the base when the container is closed."

## IV. Conclusion

For the reasons set forth above, this Court construes the disputed claims as follows:

| DISPUTED CLAIMS | THE COURT'S CONSTRUCTION |
|---|---|
| "Frangible section"; "frangible section, which upon severing" | A removable tear strip, delimited by at least two severable score lines. |
| "Tamper evident bridge" | A structure that connects the lid and base portions of the container and also contains a removable tear strip, delimited by at least two severable score lines, which once removed provides evidence that tampering has occurred. |
| "Tamper-resistant/evident container" | A container incorporating structural elements designed to deter, indicate, or deter and indicate, unauthorized tampering or opening prior to consumption. |
| "Lock" | A secondary engagement mechanism for non-permanently maintaining the peripheral flange of the cover adjacent to the upper peripheral edge of the base when the container is closed. |

IT IS SO ORDERED.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE

Case 1:14-cv-1305 Document 1-2 Page 37 Filed 02/24/2014

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____ )
INLINE PLASTICS CORP.,                   )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )          **CIVIL ACTION**
                                         )          **NO. 11-11470-TSH**
EASYPAK, LLC,                            )
                                         )
        Defendant.                       )
_____ )

## ORDER ON PLAINTIFF INLINE PLASTICS CORP.'S MOTION FOR ENTRY OF JUDGMENT OF NON-INFRINGEMENT AND TO DISMISS DEFENDANT'S COUNTERCLAIMS OR, IN THE ALTERNATIVE, ENTER FINAL JUDGMENT ON INLINE'S INFRINGEMENT CLAIM UNDER RULE 54(B) (Doc. No. 64)
### January 24, 2014

HILLMAN, D.J.

### Introduction

Plaintiff Inline Plastic Corp. ("Inline") filed its Complaint against Defendant EasyPak, LLC ("EasyPak") for infringement of U.S. Patent No. 7,118,003 (the "'003 patent") (Count I) and U.S. Patent No. 7,073,680 (the "'680 patent") (Count II). EasyPak answered the Complaint and asserted Counterclaims seeking a declaratory judgment that the '003 patent (Count II) and '680 patent (Count I) are invalid. In January 2013, this Court issued its Markman Order (Doc. No. 47). The parties agree that, under the Markman Order, judgment of non-infringement of the '003 patent should enter. In its present motion, Inline asks this Court to enter judgment immediately and dismiss EasyPak's Counterclaim regarding the '003 patent, without prejudice. EasyPak opposes this request, arguing that the Court should wait to enter judgment of non-infringement of

the '003 patent until after a determination of patent invalidity at either summary judgment or

trial. Inline has also granted EasyPak a covenant not to sue or hold liable EasyPak, or its

customers or distributors, based on any infringement of the '680 patent by the EasyPak product at

issue in this suit, identified by product identification number WT64-F-TE.[1] As a result of this

covenant, Inline asks this Court to dismiss Count II of its Complaint and Count I of EasyPak's

Counterclaim for lack of subject matter jurisdiction. For the reasons set forth below, Inline's

motion is granted.

<u>Discussion</u>

*Entry of Judgment on the '003 Patent Claim and Counterclaim*

As mentioned above, the parties agree, and the Court finds, that under this Court's claim

construction EasyPak is entitled to judgment on Count I of Inline's Complaint. When, after a

claim construction ruling, an infringement claim is resolved while an invalidity claim remains

unresolved, a district court may proceed in one of four ways. *See Nystrom v. TREX Co., Inc.*,

339 F.3d 1347, 1350-51 (Fed. Cir. 2003). First, the district court could proceed with the

unresolved invalidity claim until it has been disposed of on the merits. *Id*. at 1350. Second, the

district court could, in its discretion, enter judgment of non-infringement and dismiss the

invalidity counterclaim without prejudice. *Id*. at 1351; *see also Liquid Dynamics Corp. v.*

*Vaughan Co*., 355 F.3d 1361, 1371 (Fed.Cir.2004) ("A district court judge faced with an

---

[1] The wording of the covenant not to sue is as follows:

Inline unconditionally covenants not to sue or otherwise seek to hold EasyPak, LLC ("EasyPak") liable based on its manufacture, having manufactured, importation, distribution, use, sale and/or offering for sale of its tamper resistant/evident containers identified with the product identification number WT64-F-TE, that are described in and the subject of Inline's August 17, 2011 Complaint and/or February 24, 2012 infringement contentions, for infringement of the '680 patent. Similarly, Inline would not sue or otherwise seek to hold EasyPak's customers or distributors liable based on the importation, distribution, use, sale, and/or offering for sale of the  tamper resistant/evident containers identified with the product identification number WT64-F-TE, that are described in and the subject of Inline's August 17, 2011 Complaint and/or February 24, 2012 infringement contentions, for infringement of the '680 patent.

Inline is the owner of the entire right and title to the '680 patent and makes this covenant on behalf of itself and any successor-in-interest that Inline may have to the '680 patent, on whom it will be fully binding.

2

invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion.").  Third, the district court could expressly direct the entry of final judgment of fewer than all of the claims under Fed.R.Civ.P. 54(b) if it finds there is no just reason for delay.  *Id.*  Finally, the district court could certify the ruling for interlocutory appeal under 28 U.S.C. § 1292(b) if the court finds the ruling "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.*

In this case, EasyPak requests that the Court proceed with the invalidity claim, while Inline asks the Court to enter judgment immediately and dismiss the counterclaim without prejudice, or, in the alternative, to direct the entry of judgment under Fed.R.Civ.P 54(b).  In this case, the Court finds that the '003 patents invalidity is not "plainly evident" and thus the best and most efficient way to resolve this matter is to enter judgment of non-infringement on Count I of Inline's Complaint and to dismiss Count II of EasyPak's Counterclaim without prejudice.  *See Messerschmidt v. United States*, 29 Fed. Cl. 1, 17 (Fed. Cl. 1993) aff'd, 14 F.3d 613 (Fed. Cir. 1993) ("The crucible of deciding validity at the trial level, therefore, appears to hinge on whether the defendant presents sufficient evidence to render as 'plainly evident' the invalidity of the patent-in-suit.").

Allowing EasyPak's invalidity claims to proceed at this time might result in the re-litigation of those claims. As the Federal Circuit has explained, "[a] claim must be construed before determining its validity just as it is first construed before deciding infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 996 n. 7 (Fed.Cir.1995)).  Claims must be

"given the same meaning for purposes of both validity and infringement analysis." *Id.*

Therefore, the most efficient path is to enter judgment of non-infringement on Inline's Count I

and dismiss Count II of Easypak's Counterclaim, allowing Inline to immediately appeal the

Court's claim construction. If this Court's claim construction order is reversed, infringement and

invalidity can both be addressed under the correct claim construction.

*Dismissal of the '680 Patent Claim and Counterclaim*

Inline moves that Count II of its Complaint be dismissed, and agreed at oral argument

that it be dismissed with prejudice. Inline also asks this Court to dismiss Count I of EasyPak's

Counterclaim, which asks for a declaration of invalidity of the '680 patent, because there is no

longer an actual controversy between the parties in light of the covenant not to sue Inline has

granted EasyPak, the full text of which is reproduced in footnote 1 of this order. EasyPak

opposes the dismissal of its Counterclaim, because, it argues, the covenant to sue is not

unconditional.

Subject matter jurisdiction in a declaratory judgment suit depends on the existence, at all

stages of review, of "'a substantial controversy, between the parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,'

and the plaintiff bears the burden of proving the existence of such a controversy throughout the

litigation." *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010)

(quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764 (2007)). A case

or controversy exists in a declaratory judgment action "where a patentee asserts rights under a

patent based on certain identified ongoing or planned activity of another party, and where the

party contends that it has the right to engage in the accused activity without a license." *SanDisk

Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed.Cir.2007). "Whether a covenant

4

not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant."

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009).

In *Revolution Eyewear*, the Federal Circuit found that the district court retained subject matter jurisdiction where the covenant not to sue did not bar future infringement actions if the accused infringer again offered for sale the allegedly infringing articles. *Id*. at 1300; *see also Dow Jones & Co.*, 606 F.3d at 1347. In contrast, courts have found no controversy exists where covenants not to sue have included past and future actions regarding the accused products. *See, e.g.*, *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1363 (Fed. Cir. 2008) (dismissing declaratory judgment action based on covenant not to sue defendant, its customers, or its distributors based upon manufacture, importation, manufacture, use, sale, or offering of sale of risperdal oral solution for infringement of patents); *Transwitch Corp. v. Galazar Networks, Inc.*, 377 F. Supp. 2d 284, 293 (D. Mass. 2005) (dismissing claim based on covenant not to sue, noting "covenant not to sue encompasses all of the accused products in this lawsuit"); *CIVCO Medical Instruments Co. v. Protek Medical Prods.*, 231 F.R.D. 555, 557 n. 2 (S.D.Iowa 2005) (dismissing claim where the patentee covenanted not to sue "for infringement as to any claims of the ′889 and ′499 patents based upon Protek's DirectorTM needle guide in its current form.").

Here, the covenant not to sue protects EasyPak as well as its customers and distributors from suit for infringement of the '680 patent based on any "manufacture, having manufactured, importation, distribution, use, sale and/or offering for sale" the accused product. This language protects EasyPak, and its customers and distributors, from suit for both past and future actions for any infringement of the '680 patent by the product in suit. Inline cannot now, nor in the future, assert rights under the '680 patent based on the product which is the subject of this

5

litigation. Therefore, a case or controversy no longer exists and Count I of EasyPak's counterclaim must be dismissed for lack of subject matter jurisdiction.

Conclusion

Inline's Motion for Entry of Judgment of Non-Infringement and to Dismiss Defendant's Counterclaims is ***granted***. In accordance with the foregoing, this Court orders that judgment of non-infringement be entered on Count I of Inline's Complaint and that Count II of EasyPak's Counterclaim be dismissed without prejudice. Further, this Court orders that Count II of Inline's Complaint be dismissed with prejudice, and Count I of EasyPak's Counterclaim be dismissed for lack of subject matter jurisdiction.

SO ORDERED

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Inline Plastics Corp.,

                     Plaintiff,

       v.                           CIVIL ACTION NO. 11-11470-TSH

Easypak, LLC.,

                     Defendant,

## JUDGMENT IN A CIVIL CASE

HILLMAN, D.J.

    **Jury Verdict.** This action came before the court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

X    **Decision by the Court**. This action came to trial before the Court. The issues have been tried and a decision has been rendered.

    **IT IS ORDERED AND ADJUDGED:** that judgment of non-infringement be entered on Count I of Inline's Complaint and that Count II of EasyPak's Counterclaim be dismissed without prejudice. Further, this Court orders that Count II of Inline's Complaint be dismissed with prejudice, and Count I of EasyPak's Counterclaim be dismissed for lack of subject matter jurisdiction.

                                         ROBERT FARRELL, CLERK

Dated:  2/4/14                        /s/ Martin Castles
                                       ( By ) Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

### CENTRAL DIVISION

**INLINE PLASTICS CORP.,**

    a Connecticut corporation,

                           Plaintiff,

vs.

**EASYPAK, LLC,**

    a Massachusetts corporation,

                           Defendant.

C.A. No. 4:11-CV-11470-TSH

### NOTICE OF APPEAL

Notice is hereby given that Plaintiff, Inline Plastics Corporation, hereby appeals to the United States Court of Appeals for the Federal Circuit from the final judgment of the District Court for the District of Massachusetts, entered on February 4, 2014, and from all interlocutory orders, opinions and decrees that gave rise to that judgment, including but not limited to the January 24, 2014 Order Entering Judgment of Noninfringement and the January 22, 2013 Memorandum and Order on Claim Construction.

Dated: February 14, 2013

Respectfully submitted,
**PLAINTIFF INLINE PLASTICS CORP.**

 /s/ Adam P. Samansky
Adam P. Samansky (BBO # 661123)
asamansky@edwardswildman.com
111 Huntington Avenue
Boston, MA 021199
Tel. (617) 239-0100
Fax. (617) 227-4420

AM 25909649

1

**CERTIFICATE OF SERVICE**

    I, Adam P. Samansky, hereby certify that this document filed through the ECF system will be sent electronically to all counsel of record as registered participants as identified on the Notice of Electronic Filing (NEF) on this 14th day of February, 2013

/s/ Adam P. Samansky

Adam P. Samansky (BBO# 661123)

AM 25909649